STATE of Missouri, Respondent,

v.

Ruben JONES, Appellant.

Ruben JONES, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 66859, 68333.

Missouri Court of Appeals, Eastern District, Division One.

March 5, 1996.

Emmett D. Queener, Office of the State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, David R. Truman, Assistant Attorney General, Jefferson City, for Respondent.

KAROHL, Judge.

Ruben Jones appeals a conviction for robbery first degree. He was sentenced as a prior and persistent offender to twenty-five years imprisonment. He also appeals a denial of his Rule 29.15 motion for post conviction relief after an evidentiary hearing. We affirm.

The state proved the following: On October 4, 1993, at about 10:40 p.m., Jones walked into a 7–Eleven store and asked the cashier for change. When she opened the cash register, he demanded she give him all the money in the register or he'd blow her head off. He ordered the cashier to open another register to obtain more money. She handed him $162.20 and some food stamps. He immediately walked out of the store.

The cashier contacted the police. They prepared a composite picture of the robber. The cashier described the robber as a black male with a dark cap, dressed in black. He had a beard, mustache, and droopy eyes. She identified Jones in a photographic array as the man who robbed the 7–Eleven. The composite was distributed to aid in the capture.

On October 10, 1993, Officer Eaton spotted a man who resembled the suspect. Officer Eaton stopped him and conducted a field interview. The man identified himself as Robert Kimbel. Officer Eaton described him as 5 ft. 7 in. and 169 pounds. The officer later identified Kimbel in a photographic array as the person he stopped.

Detective Tim Hepler reviewed Officer Eaton's field interview report. He ran a check on Kimbel. The description for Kimbel was 6 ft. 2 in. and 230 pounds.

On November 13, 1993, Jones was arrested on an unrelated charge. He claimed to be Robert Kimbel. While in custody, the detective determined Robert Kimbel was Jones. He noted the similarities between the suspect wanted for robbing the 7–Eleven store and Officer Eaton's description of Kimbel.

The detective obtained a warrant for Jones' arrest and was subsequently charged with the 7–Eleven robbery.

At trial, Jones testified. He denied the charges, but admitted he gave false identification in fear of being placed in jail.

■ Jones challenges the identification by the cashier as unreliable. He claims the trial court erred in denying his motion to suppress the identification and allowed testimony on the identification because it was unreliable due to the suggestive nature of the identification procedure.

■ A review of a denial of a motion to suppress is limited to whether the evidence is sufficient to support the findings. *State v. Gibbs*, 875 S.W.2d 159, 161 (Mo.App.E.D. 1994). The facts and reasonable inferences are viewed in favor of the challenged ruling. *Id.*

■ To exclude identification testimony, the defendant must show: (1) the pre-trial identification procedures were impermissibly suggestive; and (2) the suggestive procedures made the identification at trial unreliable. *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990). Identification testimony is excluded only when the procedure is so suggestive giving rise to a very substantial likelihood of irreparable misidentification. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). The defendant must clear the suggestiveness hurdle before procuring a reliability review. *Id.* Reliability of the identification is determined under the totality of the circumstances. Factors considered are: (1) the witnesses' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and, (5) the length of time between the crime and the confrontation. *Gibbs*, 875 S.W.2d at 162.

■ We find Jones has not proven the pre-trial identification was suggestive. The cashier testified the robber was a black male and that "[h]e had on a dark cap. He had like a scraggy—a real messed-up looking beard, I can't describe it, it was really—he wasn't clean-shaven or anything. He had a mustache and droopy eyes." She further testified he wore a black jacket with a red and black like plaid collar, a white T-shirt, black pants, and a ball cap. She assisted the police in preparing a composite drawing. During the line-up, she recalled the officer asked her if the man who robbed the 7–Eleven the day she was working as a cashier was in the line-up. Three months after the robbery, she picked out Jones from the photo line-up. She testified "there's no doubt" he was the one who robbed her. She testified the police never told her to pick Jones as the robber. It was only after she picked him, did the police tell her the robber's name. An identification is not impermissibly suggestive because a witness is told by the police that the photograph array contains a picture of the suspect. *State v. Simms*, 810 S.W.2d 577, 582 (Mo.App.1991). It is implicit in a line-up procedure or photograph array, a person in the line-up or array is suspected by the police to be the perpetrator of the crime. *Id.*

Further, the officer who conducted the photographic line-up testified, "I explained to her that she was not obligated to choose anyone in this lineup and the person who committed the robbery was not necessarily depicted in the lineup. And then I handed [the photos] to her."

The cashier had ample opportunity to see the robber. She gave an accurate and detailed description of the robber. The cashier made a conscious effort to look at the robber's face because she knew she would have to describe him later to the police. Three months after the robbery, she picked out Jones from the line-up and was certain he was the one who robbed her. Using the factors set forth in *Gibbs*, we find the trial court did not abuse its discretion in refusing to suppress the line-up identification. The identification was reliable.

■ Jones also argues the trial court clearly erred in denying his Rule 29.15 mo-

tion after an evidentiary hearing. He asserts his counsel was ineffective because in closing argument his attorney argued Jones' testimony at trial was untrue.

We review a denial of post-conviction relief pursuant to *State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993) and *State v. Hamilton*, 791 S.W.2d 789 (Mo.App.1990).

Jones challenges the following argument made by counsel during closing argument:

They teach you in law school and all the way through your practice as a defense attorney that you've got to keep a poker face on at all times during the trial, that you've got to show confidence to the jury, that you have to convey an air of almost arrogance in representing a client, vehemently showing to you all that that individual is not guilty of what he's accused of. I can't do that today. I can't pretend that I'm not damaged by what happened on the stand when [Jones] was cross-examined by [the prosecutor]. I would lose credibility with you and it's just impossible for me to do that.

\* \* \* \* \* \*

Now I can't sit here and tell you that [Jones] is the most credible individual that I've ever seen. I wouldn't do that. But when you examine the evidence, ladies and gentlemen, I think it should become clear to you that the state has not proven their case, starting, ladies and gentlemen, with the very first instance of the investigation that had taken place regarding this robbery.

Taken in context of the entire closing argument, this argument was not ineffective assistance. The argument was an attempt to soften the effect of Jones' poor performance on the witness stand. Counsel attempted to direct the jury to the inconsistencies of state's witnesses in their description of the robber and Jones' appearance.

At the evidentiary hearing, defense counsel testified his argument was a strategy decision. He believed after the prosecutor cross-examined Jones, Jones lost credibility with the jury. His intent was to direct the focus of the jury away from Jones' credibility. He explained Jones' inconsistencies were due to his nervousness at trial and fear of a life sentence. He admitted it may not have been the greatest strategy, however, he probably would not try it again. However, "Counsel is not be deemed ineffective simply because the result of a chosen strategy is disappointing." *State v. Foster*, 838 S.W.2d 60, 70 (Mo.App.E.D.1992) (*quoting Rodden v. State*, 795 S.W.2d 393, 397 (Mo. banc 1990)). We find the motion court did not clearly error in denying Jones' Rule 29.15 motion.

We affirm.

REINHARD, P.J. and CRANDALL, J., concur.